UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10826 GAO

```
*************************************
DONALD STRUNK                    *
    Plaintiff                    *
                                 *
    v.                           *
                                 *
DONALD RUMSFELD, SECRETARY,      *
DEPARTMENT OF DEFENSE            *
    Defendants                   *
*************************************
```

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Donald Strunk hereby opposes the Motion of Defendant Department of Defense for Summary Judgment.

I.    **Background**

This is an action for disability discrimination under the Rehabilitation Act (29 U.S.C. §794 *et seq.*) and retaliation under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e *et seq.*).  At all relevant times plaintiff Donald Strunk has been an employee of Defendant Department of Defense.

The Defendant engaged in absolutely no discovery in this case, relying instead on the Agency's EEO investigation.  Perhaps as a result, Defendant  has even misstated the issues in this case.  This will be corrected below.

1

II.    **Statement of Facts** [1]

From 1984 to August, 2005, Strunk resided in Massachusetts. From August, 2005, and thereafter he has resided in Virginia.

Strunk was an employee of the Defense Contract Management Agency from July, 1986 to July, 2005. Strunk has been an employee of the U.S. Army Chief of Staff, TMO, since July, 2006. Strunk served honorably on active duty in the US Army from December, 1976, to May, 1980.

Strunk is a 70% disabled veteran.

In November, 1999, Strunk was promoted from a GS1102-12 Cost Price Analyst at DCMA Raytheon to a GS 1102-13 Staff Contract Administrator. Strunk was selected by Mr. Ronald Murphy, a GS1401-14, who served in the position of Chief Program Integration and Support Group, that later became the Director of Program Support and Customer Relations. Mr. Murphy had been recently reassigned to this position from a Washington headquarters position as he needed to return to Boston to care for a family member.

Mr. Murphy informed Strunk that he had selected Strunk based on his exemplary work record and extremely high recommendations from both Mr. Anthony Coit, his second tier supervisor, and his Commander Colonel Bryon Young. Mr. Murphy explained to Strunk that he was the only Level III Contracting Professional in the Office, that Mr. Sinha, Mr. Corrente, Mr. Dan Wilson, Mr. Rob Benicewicz, and Mr. Byron Reynolds (all GS 1101-13) were level III Program Managers and

---

[1] Because Defendant engaged in no discovery, and more specifically, never took Plaintiff's deposition, the facts cited herein are based upon Strunk's Affidavit, filed simultaneously herewith. In some instances, the facts cited are also based upon the documentation that Defendant submitted in support of its Motion for Summary Judgment. It such instances, the specific document will be cited. Because most of the facts cited herein are in dispute, the facts are stated in the light most favorable to the Plaintiff.

that Ms. Linda Maturo (GS-0343-13) and Ms. Vera Daniels (GS0343-12) were Management Analysts with no Defense Acquisition Workforce Certifications required.

Mr. Murphy stated that a Program Management type could not perform the office functions required and that a Contract type was required in his opinion to work with the DCMA subordinate offices, Program Integrators, and the external customers.

In the spring of 2000 Mr. Murphy was transferred from the Operation Group to the PI Group, and the function of Workload Acceptance was likewise transferred.

From the time of his promotion in November, 1999, until September, 2000, Strunk had worked very closely with daily contact with his Agency Headquarters staff especially with Colonel Lou Sands and with high level DCMA external customers.  Strunk had also worked with DCMAE HQ Staff:  Mr. Gary Antaya (Director of Finance DCMAE) as a member of management review teams, the lead providing oversight to subordinate DCMA field offices.  Strunk had worked with Mr. John Sheehan, a DCMAE GS1102-13 on a high level customer support assessment and the development of a business case. Strunk was responsible for the Early Contract Administrative Services Executive Agency given to DCMAE for the DCMA Headquarters and also assisted in rewriting agency guidance, which renamed this function Acquisition Planning and Support Services. In November, 2000, Strunk received a scheduled step increase in his pay.  In January, 2001, Mr. Joseph Sweeney signed his  performance appraisal for this time period with the highest rating possible.

In approximately late June, 2000, the Program Integration and Support Group was elevated to a Directorate and named the Program Support and Customer Relations Directorate.  Mr. Joseph Sweeney was selected over Mr. Ronald Murphy and appointed the Director.  In June, 2000, the very

first time Strunk meet Mr. Sweeney as his supervisor, Mr. Sweeney told Strunk that Acquisition Planning and Support Services (Formerly Early Contract Administrative Services) were not going to be performed by "his" directorate and that Strunk was no longer to perform these duties or have any direct contact with any headquarters staff except through him. This left Strunk with no work assignment.

(In 2003 Linda Maturo in her position of Director Program Support and Customer Relations certified that Ms. Vera Daniels had Level III Contracts functional duties with the directorate. Strunk's understanding of the duties of Vera Daniels in July, 2005, was that they where the same as those Strunk had before Mr. Sweeney became Director of Program Support and Customer Relations and removed these same duties from him.)

Mr. Sweeney told Strunk that everyone in the new Directorate would need to be retrained into the Program Management Career Field. Everyone in the office in August, 2000, received work assignments except Strunk. Linda Maturo and Michael Corrente began to get assigned regularly as acting director. Linda Maturo began to get work assignments similar in nature to Strunk's former position as Early CAS Manager, and Strunk was given the position of Training Coordinator, a position that was widely thought of as a GS 07 clerk's responsibility.

Mr. Sweeney intentionally changed the duty stations of Byron Reynolds and Dan Wilson to Boston to force Reynolds to retire. Strunk later overheard Mr. Sweeney speaking in his office bragging to someone on the phone that both Byron Reynolds had retired rather accepting the change and that he was allowing Dan Wilson to now stay in New Jersey.

In July, 2000, Mr. Sweeney gave Linda Maturo the assignment of Industrial Analysis Coordinator so she could attend the Industrial Analysis Conference in San Diego. Maturo was

scheduled to go and received orders for the trip. A week before the trip the East District Director decided to transfer the Industrial Analysis Coordinator function from Program Management Directorate back to Operations. Mr. William Murphy, a 55 year old Disabled Veteran, already had this assignment and Linda Maturo was the alternate. Strunk was given the alternate Industrial Analysis Coordinators position and given orders to attend the San Diego Conference in August, 2000. Neither Mr. Murphy nor Strunk was given the knowledge that the position was to be transferred out of the directorate. Upon their return from the training Mr. Sweeney informed Mr. Murphy and Strunk that they were to be transferred to the Operations Directorate. Mr. Murphy was soon thereafter transferred to Operations as only one slot was transferred and Strunk remained in PI.

Mr. William Murphy and Strunk had had numerous conversations regarding Mr. Sweeney and the fact that they both felt he wanted to get "rid off" all of the older guys in the office as soon as he was appointed the Director. This included Byron Reynolds, Bill Murphy, Bob Benicewicz, and Strunk.

By October, 2000, Strunk knew he needed to get away from this situation and Mr. Sweeney. Strunk saw his only option that could not be blocked by Mr. Sweeney as being a hazardous duty assignment to a combat area assigned to a CAS Combat Support Team. Strunk volunteered for an assignment to Bosnia and was accepted and assigned to a combat support team scheduled to deploy to Bosnia in January, 2001.

As soon as Mr. Sweeney knew that Strunk was leaving the office on the deployment, he immediately stopped harassing Strunk. In November and December of 2000 Strunk spent the greater portion of his time preparing for deployment with medical exams and appointments, pre-

deployment administration, and getting uniforms, etc.  Strunk received orders and was scheduled to deploy on January 14, 2001.

The first week of January, 2001,  Strunk had an eruption of a service connected disability and was admitted into Massachusetts General Hospital.  Strunk then spent the next four months in a hospital bed and missed his deployment.  At approximately the end of April, 2001, Strunk returned to work with a surgical stoma on his stomach covered by a medical device.  Mr. Sweeney immediately started to harass Strunk just as he did before.

Within an hour of Strunk's return to duty Mr. Sweeney called Strunk into his office and his first words where something to the effect of: "So you are going to retire on a Veterans disability or something?" Shortly after that time he began to ridicule publicly Strunk as a matter of course.

On one occasion in approximately June, 2001, Mr. Sweeney used the fact that Strunk's "Fly Was Down" to ridicule him in front of all the persons in the office.  Strunk was unable to fully close his waistband because of his medical appliance which caused his zipper to open.  Strunk was so enraged by this embarrassment that Strunk started to take administrative action through the union. Strunk sent Mr. Sweeney an email with his objections, and he responded with a written apology by email.

In the end of July, 2001, Strunk had a second surgery to close the stoma and reconnect his intestines. Strunk had another month convalescing and upon his return in late September, 2001, Linda Maturo was acting Director.  Strunk met with her on his first afternoon back to work to discuss his workload.  Strunk informed her that he was going to take his first week and complete and file a series of SITREP reports Mr. Sweeney had set as a job requirement, the majority of which covered the period in which Strunk was out sick.  Ms Maturo directed Strunk not file these reports

and directed him to another assignment, telling him it was a higher priority.

At the end of August, 2001, the DCMAE-PI Directorate moved to the 9th floor, and Strunk was given the worst desk assignment -- one typically given to a copy or fax machine. Strunk was the only one in the office in full view of everyone in the hallway. Strunk asked Mr. Sweeney for a more desirable location as there where many empty cubicles and was refused. This was uncomfortable, and Strunk received a great number of chides from co-workers due to this cubicle assignment.

Mr. Sweeney did not provide Strunk with appropriate level work. He constantly berated Strunk and used a disrespectful tone of voice every time he spoke with Strunk. He constantly harassed Strunk over things such as time and attendance and computer usage that others in the District did not suffer. An example of this can be had in the fact that Strunk was harassed for time given a suspension for attending the Raytheon Christmas function. Others from the District went on official time, and Strunk was harassed by a one day suspension. Others from DCMI was not sure whether that was because of the Christmas party or the normal harassment Strunk received over VA sick time Mr. Sweeney always gave Strunk.

Mr. Sweeney forced Strunk to tell him the medical requirement or nature of every hour of sick leave Strunk requested due to his disability or he said he would not approve it. He reiterated time and time again: "He had a right to know". Mr. Sweeney would say: "I don't believe you; you are lying to me." Strunk applied for numerous other jobs but was told by a number of people that Mr. Sweeney was constantly speaking in poor reference to him any time they observed him.

Mr. Sweeney made direct insults to Strunk it seemed any time Strunk was with him and at all times tried to verbally abuse and embarrass Strunk. Many of these were about Strunk's physical

condition.

Shortly after the meeting with Maturo in October, 2001, Mr. Sweeney informed Strunk that he was giving Strunk an unsatisfactory rating specifically for not filing these reports and withholding his step increase. Additionally that Mr. Sweeney was placing Strunk on a performance improvement program from which Strunk could be fired. Strunk felt that Linda Maturo must have known this was coming and her directive not to file the SITREP reports now made sense. Strunk felt/knew this was the culmination of Mr. Sweeney's attempts to get rid of the last older guy in his unit as Bob Benicewicz had retired. Strunk also was made to feel Mr. Sweeney resented the fact that Strunk had disabilities and required sick leave.

From November 2001 to December 2001, Mr. Joseph Sweeney increased his hourly harassment of Strunk. Daily in front of the entire office he would berate Strunk personally and professionally screaming at Strunk, telling him that his work was substandard. He constantly sent harassing emails to Strunk and monitored his emails when he did not treat others in the office the same way. This caused Strunk to have psychological related gastro intestinal difficulties for which Strunk was treated.

As formally shown in Defendant's filings, on October 1, 2001, Joseph E. Sweeney, Director, Program Support & Customer Relations, issued Strunk a Notification of Unacceptable Performance/Opportunity to Improve. Strunk refused to sign. (Defendant's Tab 29) Sweeney also posted postponed Strunk's Within-Grade Increase scheduled to take effect on 18 November 01. (Defendant's Tab 30) On December 28, 2001, Joseph E. Sweeney, Director, Program Support & Customer Relations, issued Strunk a Notice of Proposed Suspension. (Defendant's Tab 32)

Strunk secured letters of accolade from everyone Strunk had worked with or for at the

8

District since November, 1999, and collected all records of his past performance. Strunk presented this documented evidence of exemplary work record to Mr. Joseph Cass, Director DCMAE, asking for his assistance based on the evidence that except for Mr. Sweeney, anyone Strunk ever worked for or with thought Strunk did an excellent job and that Strunk had performance awards for all periods of employment except under Mr. Sweeney.

Based on the foregoing on January 2, 2002, Strunk contacted an EEO counselor and alleged discrimination based upon age and physical disability (50% disabled veteran) (Defendant's Tab 33)

Interestingly, shortly after Strunk's contact with an EEO counselor, on January 25, 2002, Joseph E. Sweeney, Director, Program Support & Customer Relations, issued Strunk a Notice of Decision to Suspend. (Defendant's Tab 34) And on January 25, 2002, Joseph E. Sweeney, Director, Program Support & Customer Relations, issued Strunk a Notification of Unacceptable Performance. (Defendant's Tab 36) Then on January 31, 2002, Joseph E. Sweeney, Director, Program Support & Customer Relations, issued Strunk a Notice of Proposed Demotion. (Defendant's Tab 37)

On February 19, 2002, Strunk and the Agency agreed to mediate this dispute. (Defendant's Tab 41)

On April 4, 2002, Strunk filed a Formal Complaint of Employment Discrimination, alleging age and disability (60% DAV Service Connected Conditions). This was docketed as EEO case XL-02-019. (Defendant's Tab 46)

On July 19, 2002, the Agency accepted the complaint for further processing and stated that "other information you submitted will be considered as background information." (Defendant's Tab 48)

In September, 2002, the Agency and Strunk formally entered into a Resolution of Donald

Strunk v. Department of Defense Grievances, which included his EEO case XL-02-019 and his two union grievances.  In this Resolution the Agency agree, <u>inter alia</u>, to withdraw the proposed demotion, withdraw the suspension, grant the delayed Within Grade Increase retroactive to May 17, 2002, draft a new position description for Strunk, and pay him $500. (Defendant's Tab 49)

The settlement agreement regarding this complaint was executed on September 26, 2002. The Defendant has not complied with the terms of this agreement.  Strunk has been told to sign his evaluations based on existing verbiage in the job description; Strunk never made any agreement with Mr. Sweeney or the Agency releasing the requirement to re-write his position description.

Contrary to the Defendant's assertion, during the EEO investigation of the current complaint, Strunk advised the investigator that the settlement agreement required management to re-write his position description, which was never done. (Defendant's Tab 59, p. 57)

After Strunk filed the first EEO complaint against Mr. Sweeney and was thereby able to stop him from firing Strunk, Mr. Sweeney became nastier and increasingly harassed Strunk about attendance, personal and other issues.  (Defendant's Tab 59, p. 61)

In 2003 when Joseph Sweeney was appointed as the Deputy of DCMA Raytheon, he took the same discriminatory approach and removed all official duties from three DCMA Raytheon supervisors – Anthony DeSimone, David Grosiak, and Robert Donovan, giving these duties to younger men.  This is exactly what he did to Strunk when he assumed duties as Strunk's supervisor.

In approximately June, 2003, Strunk applied for the position of Director, Program Support and Customer Relations, DCMAE-PI, GS 1101-14/15, Boston, Massachusetts.  Strunk was rated qualified and was referred for consideration for this position along with other candidates.

Syl Hubbard of the Defense Acquisition University PMT 352 Course Director told Strunk

that Linda Maturo did not have the required background, experience, or education to be sent to a PMT 352 class and that her performance was extremely poor during her attendance so much so that he remembered her name immediately.

A rating panel was convened to rate and rank the qualified candidates. Mr. Sweeney was a member of that panel.

In approximately July, 2003, Strunk applied for the position of Contracts Mission/Resource Managers, DCMAE-O, GS 1101-14, Boston, Massachusetts under two separate DCMAE job announcements numbered DCMAE-03-2912 and DCMAE 03 2791. Strunk was initially rated qualified for both positions and was referred for consideration for this position along with other candidates.

Strunk was discriminated against as he was later rated not competitive and removed from referrals for consideration for this position despite the requirement under the Disabled Veterans Affirmative Action Plan which required that Strunk remain qualified and referred. By letter dated August 8, 2003, Strunk was advised by that he was not selected for this position and instead it had been awarded to Noreen Cassaro. Ms Cassaro applied for the position when the job announcement period had closed, and her application should not have been considered. Evidence submitted to a NAGE/DCMA Arbitration case documented the fact the Cassaro application was received outside the regulatory time period.

In his current underlying EEO complaint to the Agency, Strunk alleged discrimination on the basis of age (DOB 09/06/53), disability (gastro-intestinal problems, muscular skeletal disorders and skin abnormalities rated 70% disabled by the Veterans Administration) and retaliation for prior EEO activity when on August 8, 2003, he learned that he was not selected for the position of

11

Director, Program Support and Customer Relations, GS-1101-14/15, under Job Announcement Number DCMAE-03–2160.   EEOC Jurisdiction was predicated on Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. (Defendant's Tab 7 - EEO Decision, 12/2/04)

Persons on the selection panel, which included Mr. Sweeney, were aware of Strunk's protected activity and disabilities.  (Defendant's Tab 59, p. 58-59)

Later, in March, 2005, the Defendant again discriminated and retaliated against Strunk by non competitively appointing Margaret Ciocca to the position of Deputy Director, Program Support and Customer Relations, DCMAE-PI, GS 1101-14, Boston, Massachusetts.  The position Deputy Director, Program Support and Customer Relations, DCMAE-PI, GS 1101-14, Boston, Massachusetts required Defense Acquisition Workforce Improvement Act Certification in Program Management and Defense Acquisition Corps Membership.  Margaret Ciocca is not a member of the Defense Acquisition Corps nor does she hold any Defense Acquisition Workforce Improvement Act Certifications.  Strunk was discriminated and retaliated against as Strunk was qualified for this non competitive position and not appointed despite the requirement under the Disabled Veterans Affirmative Action Plan, which requires non competitive appointments of DAV to promotional opportunities for which they are qualified.  Strunk superseded the minimum qualifications for the position in question.  Strunk is a member of the Defense Acquisition Corps.  He should have been considered for, if not awarded, these positions in question.

By being passed over for this and other positions, Defendant failed to advance Strunk on account of, or to take into consideration, his disabilities and disabled veteran status.  By being passed over for this and other positions, Strunk was retaliated against for having pursued an EEO

claim the prior year.

In July 2005 Strunk was selected for the position of Staff Contracts Officer for the Office of Chief of Staff of the Army. Strunk received an outstanding performance rating and a performance award for the period of performance from July 2005 to the present. This work is a full performance GS 14 level. Strunk have received outstanding performance rating up to Mr. Sweeney's supervision and immediately after.

The EEO Report of Investigation summarized Strunk's case at that level as follows:

"• He filed a formal discrimination complaint in 2001, and that his supervisor at that time was Mr. Sweeney.
• He suffers from a physical disability, in particular service-connected disabilities that have resulted in a 70% disability rating from the Department of Veterans Affairs (VA).
• His medical conditions are a gastro-intestinal related condition, muscular skeletal disorders and skin abnormalities, combat stress syndrome, and a 10-21 percent hearing loss in both ears, and that these conditions impact his major life activities because he has a great deal of pain, he is sometimes incontinent and has to be located close to restrooms, and he has to wear certain clothing due to the incontinence.
• Mr. Sweeney, his first line supervisor, was aware of the Complainant's condition.
• Mr. Bogusz was aware of the Complainant's medical conditions and status as disabled veteran.

"The Complainant argues that the selectee, Linda Maturo, was not qualified for the position when she was selected, as the position requires a Bachelors level degree in order to satisfy minimum eligibility requirements, and the selectee's Bachelors degree was not conferred until after her selection. The Complainant points out that he is more qualified for the position than the selectee because he:
• Has a graduate degree in finance.
• Has an undergraduate degree in law enforcement and business.
• Has an undergraduate equivalency in electrical and mechanical engineering.
• Has undergraduate course work in accounting and finance.
• Is certified in three career fields under the Defense Acquisition Workforce Improvement Act (DAWIA).
• Possesses 25 years of work experience in property management, plant clearance and disposal, contract administration, contract negotiating, and interfacing with flag officers and U.S. and foreign officials.

"The Complainant indicates that Mr. Sweeney discriminated against him based on his age,

disability (physical), and reprisal for prior EEO activity, in effecting the outcome of the selection recommendation by:

- Providing unfair advantages to the selectee prior to the vacancy at issue, such as allowing the selectee to act in Mr. Sweeney's position, placing the selectee into a newly created position as branch leader without competition, and allowing the selectee to simultaneously enroll in two Program Management Tools (PMT) courses that are supposed to be taken sequentially.
- Influencing the other panel members who recommended the selections to Mr. Ernst.

"The Complainant argues that he applied for the subject vacancy and indicated that he is eligible for consideration under the Disabled Veterans Affirmative Action Plan (DVAAP). He states that if he had been referred as a DVAAP eligible candidate, and if the DCMAE supported the DVAAP, he would have been selected for the position, since DVAAP requires the recruitment and selection of disabled veterans over other candidates. He adds that not being placed on the referral certificate as a disable veteran is discriminatory." (Defendant's Tab 59, p. 4-5; see also pages 56-62)

Further on in the EEO Report of Investigation it further stated with regard to Strunk's case

as follows:

"The Complainant counters (IF pp 100-142):

- That the selectee, Linda Maturo, was given unfair development opportunities, which is evidenced by the fact that she was promoted from GS-11 to GS-13 without competition, and that Mr. Sweeney handled all administrative matters pertaining to her PMT training himself.
- That Mr. Sweeney intentionally prevented him from attending PMT 250 and PMT 352 to make the Complainant less competitive.
- That Mr. Sweeney's efforts to persuade other panel members to not recommend him for selection is demonstrated by his prior relationship with another panel member, Lisa Clark, and by the similarity of the manner with which they both described the reason they did not recommend him for selection consideration.
- That Mr. Sweeney's statement that the Defense Acquisition University decides who can attend courses is untrue, and that the PMT 352 course director indicated that PMT faculty is frustrated by military activities selecting people who are not qualified to attend.
- That at the time Mr. Sweeney certified the selectee in Program Management she did not possess at least 24 semester hours in accounting, business law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, and organization and management or at least 24 semester hours in the career field supplemented by 12 semester hours in the fields listed above.
- That the selectee's work experience is on DCMAE District Staff only, and does not satisfy the requirement to have 4 years of acquisition experience with at least 2 years

in a program office or similar organization dedicated to matrix support, with at least one year in a program management position with cost, schedule, and performance responsibilities.

•  That Mr. John Beckman, DCMA HQ Human Relations, made severe objections when the selectee's application was sent for approval as she did not have the course work completed nor the degree from the University of Phoenix University." (Defendant's Tab 59, p. 9; see also pages 56-62)

The foregoing was supported in greater detail by Strunk's sworn statement made during the EEO investigation. (Defendant's Tab 59, p. 56-62, 100 -119)

## III.    Defendant Misstates The Issues

As stated previously, Defendant has conducted no discovery in this case.  All it has done is reviewed the Agency EEO investigation of this case.  Therefore on page 2 of its Memorandum it has misstated the issues in this case.

As stated in the Court complaint, this is an action for disability discrimination under the Rehabilitation Act (29 U.S.C. §794 *et seq.*) and retaliation under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e *et seq.*).  Because the Defendant has conducted no discovery, it has failed to understand that Strunk has not raised any issue of age discrimination in this particular Court complaint.

Defendant is accurate the Strunk filed an EEO complaint regarding his nonselection for the position of Director, Program Support and Customer Relations, DCMAE-PI, GS 1101-14/15, Boston, Massachusetts. However, Defendant misunderstands the importance and relevance of Strunk's recitation in this Court complaint that (1) he was also not selected for the position of Contracts Mission/Resource Managers, DCMAE-O, GS 1101-14, Boston, Massachusetts, (2) he was also not selected for the position of Deputy Director, Program Support and Customer Relations,

DCMAE-PI, GS 1101-14, Boston, Massachusetts, and (3) Defendant has not complied with a settlement agreement executed on September 26, 2002.  (Defendant's Memorandum, p. 2)

Defendant believes that the only issue with regard to the latter three allegations is only whether Strunk did or did not file an EEO complaint with regard to these matters.  That is not the importance or relevance of these three other allegations.  Rather, they provide further background and evidence for Strunk's basic claim; he was a victim of discrimination and retaliation when he was not selected for the position of Director, Program Support and Customer Relations, DCMAE-PI, GS 1101-14/15, Boston, Massachusetts.

## IV.    Strunk Has Presented Evidence Of Discrimination And Retaliation

Without the benefit of any discovery, Defendant concludes that "plaintiff has offered no evidence that Ms. Maturo's selection was motivated in any way by the plaintiff's age or claimed disability." (Defendant's memorandum, p. 9)   As stated, the issues in this case are disability and retaliation.  And because Defendant conducted no discovery, it is unaware of all of the foregoing evidence of discriminatory and retaliatory motive evidenced by Mr. Sweeney, as recounted above.

Without restating everything noted above, it can be summarized as follows:

Strunk is a 70% disabled veteran.

All managers but for Mr. Sweeney have highly rated and promoted Strunk.

Mr. Sweeney has demonstrated a bias against Strunk, including a bias against his disability and his having filed and EEO charge against Mr. Sweeney's actions.

Mr. Sweeney has demonstrated a bias in favor of Maturo.

As soon as Mr. Sweeney knew that Strunk was leaving the office on the military deployment,

he immediately stopped harassing Strunk. When Strunk returned to work after a medical problem, Mr. Sweeney immediately started to harass Strunk just as he did before. Within an hour of Strunk's return to duty Mr. Sweeney called Strunk into his office and his first words where something to the effect of: "So you are going to retire on a Veterans disability or something?" Shortly after that time he began to ridicule publicly Strunk as a matter of course, including matters pertaining to his disability.

Mr. Sweeney forced Strunk to tell him the medical requirement or nature of every hour of sick leave Strunk requested due to his disability or he said he would not approve it. He reiterated time and time again: "He had a right to know" and that Strunk was lying to him. Strunk applied for numerous other jobs but was told by a number of people that Mr. Sweeney was constantly speaking in poor reference to him any time they observed him.

Mr. Sweeney without cause tried to have Strunk fired. Mr. Sweeney clearly resented the fact that Strunk had disabilities and required sick leave.

On January 2, 2002, Strunk contacted an EEO counselor. Strunk and the Agency mediated his disputes, with Mr. Strunk's demotion and termination being thwarted. The settlement agreement required management to re-write his position description, which was never done.

After Strunk filed the first EEO complaint against Mr. Sweeney and was thereby able to stop him from firing Strunk, Mr. Sweeney became even more hostile to Strunk. (Defendant's Tab 59, p. 61)

When Strunk applied for the position of Director, Program Support and Customer Relations, he was qualified. Maturo did not have the required background, experience, or education. Sweeney was part of the panel that selected Maturo.

17

Strunk is eligible for consideration under the Disabled Veterans Affirmative Action Plan (DVAAP). If he had been referred as a DVAAP eligible candidate, he could have been selected for the position, since DVAAP requires the recruitment and selection of disabled veterans over other candidates.

Similarly Strunk applied for the position of Contracts Mission/Resource Managers, and was qualified for it. Yet Strunk was removed from consideration for this position despite the requirement under the Disabled Veterans Affirmative Action Plan which required that Strunk remain qualified and referred. The position was awarded to Noreen Cassaro, who applied for the position when the job announcement period had closed.

In March, 2005, the Defendant again discriminated and retaliated against Strunk by non competitively appointing Margaret Ciocca to the position of Deputy Director, Program Support and Customer Relations. The position required Defense Acquisition Workforce Improvement Act Certification in Program Management and Defense Acquisition Corps Membership. Margaret Ciocca is not a member of the Defense Acquisition Corps nor does she hold any Defense Acquisition Workforce Improvement Act Certifications. Strunk did.

All of the foregoing evidence is either unknown to the Defendant or ignored by the Defendant in its Motion.

## V.    The Defendant Cannot Ignore Strunk's Evidence of Further Discrimination

In its Memorandum (p. 14-15) the Defendant simply ignores Strunk's evidence of further discrimination and retaliation by stating that Strunk failed to exhaust his administrative remedies regarding the other non-selections and the breach of the settlement agreement. While there maybe

some merit that Strunk cannot independently pursue those matters because he did not file separate

EEO charges with regard to them, that does not mean that these events cannot serve as further

evidence that he was a victim of discrimination and retaliation with regard to the similar issues over

which he did file EEO charges.  See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395-396 (1st Cir.

2002) (Evidence of conduct outside the scope of a timely EEOC charge can be considered as

relevant background evidence.)    Even during the Agency EEO investigation this was

acknowledged: on July 19, 2002, the Agency accepted the complaint for further processing and

stated that "other information you submitted will be considered as background information."

(Defendant's Tab 48)

## VI.    CONCLUSION

Based on the foregoing Defendant's Motion for Summary Judgment should be denied.


                                        Donald Strunk
                                        By his attorney


                                        _____
                                        Scott A. Lathrop, Esq.
                                        Scott A. Lathrop & Associates
                                        122 Old Ayer Road
                                        Groton, MA 01450
                                        (978) 448-8234
                                        BBO No. 287820

Dated:  July 7, 2006

19

<u>Certificate of Service</u>

I, Scott A. Lathrop, hereby certify that Strunk have served the foregoing Opposition on the defendants by mailing this day a copy to the last known address of their Attorney of Record.

_____
Scott A. Lathrop

Dated:  July 7, 2006